**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**BOBBIE ROBERTS,**

        Plaintiff,

v.

**STATE FARM FIRE AND CASUALTY COMPANY,**

        Defendant.

Civil Action 7:11-CV-86 (HL)

**ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 10). For the reasons discussed herein, the Motion is granted.

**I.    INTRODUCTORY MATTERS**

Plaintiff, who is proceeding *pro se*, brought suit against her insurance carrier, Defendant State Farm, seeking damages for the insurer's failure to pay a fire loss claim. Defendant has now moved for summary judgment on Plaintiff's claims.

As required by Local Rule 56, Defendant filed a statement of undisputed material facts ("DSOMF") in support of its Motion. While Plaintiff responded to Defendant's Motion, she did not respond to the DSOMF, as required by Local Rule 56. Thus, the facts contained in the DSOMF are deemed admitted. M.D. Ga. R. 56. However, the Court must still review the record citations in the DSOMF to "determine if there is, indeed, no genuine issue of material fact."

Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted).

## II.   FACTS

On April 23, 2010, a fire damaged a home and personal property located at 313 3rd Street, S.W., in Moultrie, Georgia. (DSOMF, ¶ 1; Affidavit of Richard Wallace, ¶ 3). At the time of the loss, Defendant insured the personal property located at the home under Policy No. 81-BS-U931-4. (DSOMF, ¶ 2; Wallace Aff., ¶ 3, Ex. A; Doc. 10-4).[1] Plaintiff, the insured, occupied the home as a tenant with her husband, Ernest Roberts. Also living in the home were Plaintiff's adult sons, Anthony Walker and Elliott Walker. (Wallace Aff., ¶ 4). Plaintiff submitted a claim for damage to property insured under the policy. (DSOMF, ¶ 3; Wallace Aff., ¶ 3).

As part of its investigation of Plaintiff's claim, Defendant retained Dennis Ellerbee, a fire cause and origin expert, to evaluate where and how the fire started. (Wallace Aff., ¶¶ 5-6). Mr. Ellerbee conducted an examination of the scene and interviewed Plaintiff and fire officials. (Wallace Aff., ¶ 6). The scene examination revealed that the fire originated on a bed in an unoccupied room of the home. (DSOMF, ¶ 4; Wallace Aff., ¶ 6). The interviews revealed that the house was secure when the fire department arrived. (Wallace Aff., ¶ 6). No one was home when the fire occurred. (Id.) There were no electrical or heat

---

[1] Policy No. 81-BS-U931-4 is a renter's policy that only insured the personal property contained in the dwelling. The policy did not insure the dwelling itself.

producing appliances that had been used in the room where the fire started. (Id.) There were no known heat sources on or near the bed where the fire originated. (Id.) Mr. Ellerbee was unable to rule out an intentional human act as the cause of the fire. (Id.)

Based on these findings, Defendant continued to investigate the cause of the fire. (Wallace Aff., ¶ 7). Defendant's investigation revealed several interesting pieces of information. First, other members of Plaintiff's family had a history of fire losses. (DSOMF, ¶ 6; Wallace Aff., ¶ 8). Second, although the house was locked and unoccupied when the fire department arrived, neighbors allegedly saw a person leaving the home as the home was "smoking" from the fire. (DSOMF, 6; Wallace Aff., ¶¶ 6, 9). Third, the home was owned by Plaintiff's son, Anthony Walker, who had other insurance on the property through another carrier. (DSOMF, ¶ 8; Wallace Aff., ¶ 10, Ex. B; Doc. 10-5). Fourth, an informant alleged that he was offered money to burn Plaintiff's home approximately ten days before the date of loss. The informant allegedly helped move personal property from the home before the fire to an off-site storage facility. A search of the storage facility conducted by police pursuant to a search warrant revealed the presence of household property allegedly removed from Plaintiff's home before the fire. (DSOMF, ¶ 9; Wallace Aff., ¶ 12). Finally, at the time of the fire, Plaintiff was in bankruptcy, had lost a previous home due to foreclosure, was involved in a civil lawsuit over the purchase of another residence, and had to shut down her

restaurant business due to health issues. (DSOMF, ¶ 11; Wallace Aff., ¶ 13, Ex. D; Doc. 10-7).

Within one week after the fire, on April 29, 2009, Plaintiff submitted an inventory listing the personal property she and her husband allegedly lost in the fire. (DSOMF, ¶ 10, Wallace Aff., ¶ 11, Ex. C; Doc. 10-6). Thereafter, on May 14 and May 19, Plaintiff's sons both submitted personal property inventories containing separate claims of their own. (Id.) However, the inventories submitted by Plaintiff and the others did not disclose information concerning the place of purchase for all of the items claimed in the loss and did not include supporting documents, such as receipts or proof of purchase, as required by the policy. (Supplemental Affidavit of Richard Wallace, ¶ 10).

The insurance policy at issue contained certain conditions with which an insured was obligation to comply in the event of a loss. Specifically, the policy contained the following:

**SECTION I - CONDITIONS,**

2. **Your[2] Duties After Loss:**

>After a loss to which this insurance may apply, you shall see that the following duties are performed:
>
>…

[2] The policy defines "you" and "yours" as the "named insured" shown in the Declarations, who is Plaintiff. "Your spouse is included if a resident of your household." (Wallace Aff., Ex. A; Doc. 10-4, p. 5). Thus, references to "you" and "yours" in the policy would apply to both Plaintiff and her husband.

      c.     prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

      d.     as often as we reasonably require:

           (1)     exhibit the damaged property;

           (2)     provide us with records and documents we request and permit us to make copies;

           (3)     submit to and subscribe, while not in the presence of any other **insured**[3]:

                (a)     statements; and

                (b)     examinations under oath; and

           (4)     produce employees, members of the **insured**'s household or others for examination under oath to the extent it is within the **insured**'s power to do so; and

      e.     submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

           (1)     the time and cause of loss;

---

[3] The policy defines "insured" as "you and, if residents of your household: (a) your relatives; and (b) any other person under the age of 21 who is in the care of a person described above." (Wallace Aff., Ex. A; Doc. 10-4, p. 5). Thus, Plaintiff, her husband, and her two sons would each be considered an "insured" under the policy.

(2)     interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3)     other insurance which may cover the loss;

(4)     changes in title or occupancy of the property during the time of this policy;

(5)     specifications of any damaged building and detailed estimates for repair of the damage;

(6)     an inventory of damaged or stolen personal property described in 2.c;

(7)     receipts for additional living expense incurred and records supporting the fair rental value loss; and

(8)     evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

(DSOMF, ¶ 12; Wallace Aff., ¶ 14, Ex. A; Doc. 10-4, p. 15).[4]

On May 6, 2010, Plaintiff signed a form which authorized Defendant to request documents or information from Plaintiff's employers, banks, savings institutions, creditors, and others. (Wallace Supp. Aff., ¶ 2). However, Defendant was never provided with information about Plaintiff's creditors, deposit accounts,

---

[4] Plaintiff was also required to contact her insurance agent to notify him of the loss. There does not appear to be any dispute that Plaintiff properly contacted the agent.

or income sources sufficient for Defendant to request any documents. (Wallace Supp. Aff., ¶¶ 4-6).

On May 20, 2010, Defendant advised Plaintiff of the policy conditions and requested that Plaintiff submit a signed, sworn Proof of Loss and other documents verifying and substantiating the amounts claimed for the loss. (DSOMF, ¶ 13; Wallace Aff., ¶ 15). According to Plaintiff, "Defendants sent to the Plaintiff a letter of instructions and requirements for the Plaintiff to perform, in order to collect under this policy, as well as the forms required," and "the forms given to the Plaintiff by Defendants have been properly completed and returned to the Defendants, along with a demand for payment." (Doc. 1-1, p. 3).[5] On May 24, 2010, Defendant received a Proof of Loss form signed by Plaintiff under oath. (DSOMF ¶ 14; Wallace Aff., ¶ 16, Ex. E; Doc. 10-8). The Proof of Loss submitted by Plaintiff failed to disclose the other insurance on the property; failed to disclose the interests of Plaintiff's husband and sons in the property; failed to include documents supporting the items claimed; and failed to disclose the fact that Plaintiff's son Anthony actually owned the property. (DSOMF ¶ 15; Wallace Aff., ¶ 17, Ex. E; Doc. 10-8; Wallace Supp. Aff., ¶ 13).

---

[5] While Plaintiff did not respond to the DSOMF or file an affidavit or other sworn statement in connection with her response to the summary judgment motion, she did file a sworn complaint that describes facts based upon personal knowledge. A *pro se* plaintiff's verified complaint is the equivalent of an affidavit and is considered competent evidence for summary judgment purposes where the complaint asserts non-conclusory allegations based on the plaintiff's personal knowledge. *See* Sammons v. Taylor, 967 F.2d 1533, 1544 n. 5 (11th Cir. 1992). Thus, the Court will consider the allegations contained in the complaint in ruling on the summary judgment motion.

Because of the uncertainty in the documents and information concerning Plaintiff's financial affairs, other insurance, other interests in the property, the financial affairs of other household members, and the purchase and ownership of items claimed in the loss, by letter dated June 10, 2010, Defendant demanded that Plaintiff, her husband, and her sons submit to examinations under oath. The examinations were scheduled for June 23, 2010 at the Colquitt County Courthouse. (DSOMF ¶ 16; Wallace Aff., ¶ 18, Ex. F; Doc. 10-9). In addition, because the documents and information received from Plaintiff failed to provide adequate information for Defendant to obtain its own documents relating to these issues, Defendant requested the following documents from Plaintiff: (1) copies of income records, bank statements, and other income records for the years 2007 through 2010, the year of the loss; (2) copies of Plaintiff's loans/debts owed at the time of the loss; (3) copies of documents reflecting Plaintiff's regular household expenses for the one-year period pre-dating the loss (April 2009 through April 2010); (4) copies of business records pertaining to Plaintiff's closed business; (5) copies of documents relating to the use and occupancy of the property including any lease agreement pertaining to the home or property; (6) documents substantiating the amount of the claims submitted including receipts, appraisals, and estimates; and (7) documents pertaining to Plaintiff's activities at or around the time of the loss including cell phone records, debit/ATM records,

8

and credit card receipts for the period January 1 through May 1, 2010. (DSOMF ¶¶ 16-17; Wallace Aff., ¶¶ 18, 33, Exs. F, L; Wallace Supp. Aff., ¶ 15).

On June 10, 2010, Plaintiff's son Elliott was arrested and charged with insurance fraud arising out of the fire loss and claim. Plaintiff and her son Anthony were arrested and charged with insurance fraud on June 11. (Wallace Aff., ¶ 20, Ex. G; Doc. 10-10). While Plaintiff appeared on June 23, 2010 at the Colquitt County Courthouse for the scheduled examination under oath, she did not submit to the examination. Plaintiff's criminal defense attorney counseled Plaintiff not to go forward with her sworn statement. Plaintiff did not produce any of the documents requested in Defendant's letter of June 10 either. (DSOMF, ¶ 18; Wallace Aff., ¶ 22, Ex. H; Doc. 10-11). Counsel for Defendant notified Plaintiff on the record that while she was counseled by her attorney not to give her sworn testimony, she still had an obligation to produce the requested documents. (Wallace Aff., Ex. H; Doc. 10-11). Neither Plaintiff's husband nor her two sons submitted to the examination on June 23. (DSOMF, ¶ 18; Wallace Aff., ¶ 22).

On July 2 and August 16, 2010, Defendant reiterated its request for the examinations under oath and for the documents in letters directed to Plaintiff's criminal defense attorney. (DSOMF, ¶ 19; Wallace Aff., ¶ 23, Exs. I-J; Docs. 10-12, 10-13). On September 7, 2010, Plaintiff's criminal defense attorney responded in writing that Plaintiff would not participate in Defendant's investigation and that she would not produce the documents or submit to the

examination under oath, even if there were negative implications arising from her refusal to participate. (DSOMF, ¶ 20; Wallace Aff., ¶ 24, Ex. K; Doc. 10-14).

On October 5, 2010, Defendant notified Plaintiff in writing that it considered her refusal to participate in the investigation a breach of the policy conditions. Plaintiff was given an opportunity to cure the breach by immediately submitting to the examination under oath and producing all documents previously requested, subject to all other policy terms and conditions. Defendant specifically reserved the right to assert any policy defenses in the future. (DSOMF, ¶ 21; Wallace Aff., ¶ 25, Ex. L; Doc. 10-15).

On October 27, 2010, Plaintiff requested a copy of her insurance policy, which was provided by Defendant. In the letter sent to Plaintiff on that date, Defendant again specifically reserved its right to assert any policy defenses at any time. Defendant told Plaintiff that if she wished for Defendant "to give any further consideration to your claim, you must immediately and fully cooperate with our request." (Wallace Aff., ¶ 26, Ex. M; Doc. 10-16). On January 27, 2011, Plaintiff requested copies of the inventories that she and her family previously submitted. Defendant responded to this request by letter dated February 2, 2011, in which it reiterated that it was not waiving any policy defenses. (Wallace Aff., ¶ 27, Ex. N; Doc. 10-17). On April 18, 2011, Plaintiff stated that she intended to comply with Defendant's previous requests though she expressed concern about the time remaining under the policy for her to file suit. (Wallace Aff., ¶ 28). On

April 19, 2011, Defendant confirmed in writing that a two-year time limit (through April 23, 2012) applied to the fire loss and reiterated its requests for the examinations and the documents needed to evaluate the claim. Defendant stated that "[t]his letter should not be construed as a waiver of State Farm's rights under your policy number 81-ES-U931-4. In fact, State Farm insists on strict compliance with all policy provisions." (Wallace Aff., ¶ 29, Ex. O; Doc. 10-18). On April 23, 2011, Plaintiff requested a new date for the examinations and expressed her intention to submit the requested documents. (Wallace Aff., ¶ 30).

Notwithstanding the fact Plaintiff had not provided any of the documents requested by Defendant in its June 10, 2010 letter (DSOMF, ¶ 24; Wallace Aff., ¶ 34), and neither Plaintiff, her husband, nor her sons had submitted to and signed their examinations under oath (DSOMF, ¶ 25; Wallace Aff., ¶ 35), on April 25, 2011, Plaintiff filed suit against Defendant in the Superior Court of Colquitt County. (Doc. 1; Wallace Aff., ¶ 31). Plaintiff's policy contains the following provision:

### SECTION I - CONDITIONS

6.  **Suit Against Us.**  No action shall be brought unless there has been compliance with the policy provisions. . . .

(Wallace Aff., ¶ 32, Ex. A; Doc. 10-4, p. 16).

Other than what was disclosed in the inventories, the Proof of Loss, and in Plaintiff's bankruptcy petition, Defendant did not receive any other information or

documents from Plaintiff, her husband, or her sons pertaining to the household finances, the existence of other insurance, the nature and measure of other interests in the property, and the purchase and ownership of items claimed in the loss. (Wallace Supp. Aff., ¶ 19). Because Plaintiff, her husband, and her sons never submitted to the examinations under oath, and never produced the requested documents, Defendant was unable to identify other persons or entities from whom to request documents pertaining to the household finances, the existence of other insurance, the nature and measure of other interests in the property, and the purchase and ownership of items claimed in the loss. (Wallace Supp. Aff., ¶ 20).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. Id. at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Id.

## IV.    ANALYSIS

### A.    Breach of Contract Claim

Defendant contends it is entitled to summary judgment in its favor because Plaintiff failed to comply with the terms and conditions of her policy prior to filing suit by both failing to give an examination under oath and to produce the requested documents. Plaintiff responds that she did in fact cooperate with Defendant and "gave a recorded statement and what ever documents that the Plaintiff had to defendant's [sic]." (Doc. 13, p. 3).

"When questions exist as to the cause of a fire for which a claim is made, the insurer has the right to investigate before reaching a decision as to whether to pay the claim." Farmer v. Allstate Ins. Co., 396 F.Supp.2d 1379, 1381 (N.D. Ga. 2005) (citing Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 946 (11th Cir. 1990)). Under Georgia law, "[a]n insurer is entitled to require its insured to abide by the policy terms, and the insured is required to cooperate with the insurer in investigation and resolution of the claim." Diamonds & Denims, Inc. v. First of Ga. Ins. Co., 203 Ga. App. 681, 683, 417 S.E.2d 440 (1992) (internal citations omitted). Failure to comply with policy provisions which are conditions precedent to bringing suit is a breach which precludes recovery as a matter of law. See Farmer, 396 F.Supp.2d at 1382.

Here, the policy required Plaintiff to provide records and documents as requested by Defendant and to submit to an examination under oath. Fulfillment

of these requirements was a condition precedent to bringing suit as the policy specifically states that no action can be brought unless there has been compliance with the policy provisions. The case law is clear that such conditions precedent are allowable and binding against the insured. *See* id.; Hill v. Safeco Ins. Co. of Am., 93 F.Supp.2d 1375, 1383 (M.D. Ga. 1999); Townley v. Patterson, 139 Ga. App. 249, 228 S.E.2d 164 (1976).

Under Georgia law, Plaintiff breached the insurance contract if she failed to provide "*any* material information" required under the policy. Halcome v. Cincinnati Ins. Co., 254 Ga. 742, 744, 334 S.E.2d 155 (1985). In a case like this where there is possible fraud, information about the insured's income and sources of income is material and relevant to possible fraud and to the insured's possible financial motive. *See* id. at 744; Meyers v. State Farm Fire & Cas. Co., 801 F.Supp. 709, 716 (N.D. Ga. 1992) ("[I]t is merely a matter of common sense that where an insurer alleges arson as a defense to a claim for fire loss, the financial status and potential financial gain to the insured - as the suspected arsonist - are circumstances material to the defense.") There is no dispute that Plaintiff never gave copies of her income records, bank statements, debt statements, and expense documents to Defendant as requested. All she submitted was a Proof of Loss, a personal property inventory, and a blank authorization Defendant could use to request documents from various entities.

Thus, it appears Plaintiff has breached the insurance contract by failing to provide material information to Defendant.

The Court acknowledges that in <u>Diamonds & Denims</u>, the Georgia Court of Appeals held that if "the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by jury." 203 Ga. App. at 683. Nevertheless, the Court does not believe that a fact question exists in this case, even though Plaintiff provided some documents to Defendant. In <u>Diamonds & Denims</u>, the documents requested by the insurance company were all destroyed in the fire. The insured's employees offered to provide alternative documentation, but the insurer never attempted to procure those documents. <u>Id.</u> Here, there has been no contention that the requested documents were destroyed or are unavailable. Further, even though Defendant has repeatedly requested the documents, Plaintiff has not given the documents to Defendant or provided sufficient information to Defendant for it to obtain the documents. The requested documents go directly to a possible financial motive for making a claim. *See* <u>Allstate Ins. Co. v. Hamler</u>, 247 Ga. App. 574, 577, 545 S.E.2d 12 (2001) (distinguishing <u>Diamonds & Denims</u> on the basis that while the plaintiff had provided some documents requested by the insurer, she refused to provide information that would have reflected on a possible financial motive for making a claim, despite a lengthy and detailed request by the insurer).

It is clear to the Court that Plaintiff breached the insurance contract by failing to provide the requested documents. However, if Plaintiff can point to some principle that excuses this failure, she might be able to survive summary judgment. *See* Halcome, 254 Ga. at 742. Unfortunately, Plaintiff has not identified any such principle. She cannot invoke her Fifth Amendment right not to incriminate herself because the self-incrimination privilege "applies only when the accused is compelled to make a testimonial communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569 (1976) (emphasis removed). While testimony under the Fifth Amendment may include the production of documents, Grand Jury Subpoena Dated April 9, 1996 v. Smith, 87 F.3d 1198, 1200 (11th Cir. 1996), Plaintiff has not shown how turning over the requested documents could tend to incriminate her.[6] Plaintiff's only other argument is that she was forced to file suit when she did because the one year statute of limitation provided in the policy was about to run. That argument, however, holds little weight. Plaintiff was informed, both orally and in writing, that the period of filing suit on fire losses had been extended to two years from the date of loss. If Defendant claimed that Plaintiff missed the filing deadline, which it does not in this case, a court would find that through its affirmative statements to Plaintiff that the statute of limitations was two years, Defendant waived any right

---

[6] *See also* Pervis, 901 F.2d at 944 (holding that the Fifth Amendment privilege against self-incrimination did not excuse the plaintiff from fulfilling his contractual obligation to provide an examination under oath).

to enforce a one-year period. And in any event, Defendant could not enforce the one-year time limit because it violates an insurance regulation in Georgia. The current fire insurance regulations require a minimum two-year period in which to bring suit on a policy. *See* Ga. Comp. R. & Regs. rr. 120-2-19-.01; Thornton v. Ga. Farm Bureau Mut. Ins. Co., 287 Ga. 379, 381, 695 S.E.2d 642 (2010). The regulation requiring a two-year period is effective for all policies written or renewed on or after June 20, 2006. Plaintiff's policy was written with an effective date of January 29, 2010, which means the updated insurance regulation applies to the policy.

As for the examination under oath, Plaintiff contends she attempted to reschedule the examination prior to her filing suit but she never heard anything from Defendant about a new examination date.[7] Even assuming that is true, and even if Plaintiff had in fact participated in the examination under oath, her failure to provide the requested documents provides grounds for summary judgment in Defendant's favor. Thus, Plaintiff's argument that she attempted to complete the examination under oath does not change the outcome of this case.[8]

---

[7] While Plaintiff states she "gave a recorded statement" to Defendant, it is clear from the record she never sat for the examination under oath requested by Defendant and required by the policy.

[8] Plaintiff makes a one sentence argument that Defendant waived its rights to an examination under oath. The Court disagrees that any such rights were waived, but in any event, even if Defendant waived its right to insist on an examination under oath, Plaintiff still failed to comply with the contract provisions by filing suit before providing the requested documents.

Because Plaintiff refused to provide the requested documents to Defendant and comply with a condition precedent, she cannot maintain a claim against Defendant. The Motion for Summary Judgment on the breach of contract claim is granted.

### B.    Bad Faith Claim

In her complaint, Plaintiff alleges a bad faith claim under O.C.G.A. § 33-4-6. That statute provides that if an insurer refuses in bad faith to pay a covered loss within 60 days after the insured makes a demand, the insurer may be held liable to pay the holder of the policy a bad faith penalty and reasonable attorney's fees. However, penalties for bad faith refusal to pay a claim are not authorized where an insurance company has a reasonable ground to contest the claim. *See* Shaffer v. State Farm Mut. Auto. Ins. Co., 246 Ga. App. 244, 245, 540 S.E.2d 227 (2000). Because Plaintiff breached the insurance contract and was precluded from recovery, Defendant had reasonable grounds to refuse payment of the claim. Defendant is also entitled to summary judgment on Plaintiff's claim for bad faith penalties and attorney's fees under O.C.G.A. § 33-4-6.

## V.    CONCLUSION

For the reasons discussed above, the Court grants Defendant's Motion for Summary Judgment (Doc. 10). The Clerk of Court is directed to enter judgment in favor of Defendant.

**SO ORDERED**, this the 14th day of December, 2011.

_**s/ Hugh Lawson**_
**HUGH LAWSON, SENIOR JUDGE**

mbh